# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINGBO YITUO ENTERPRISE MANAGEMENT CO., LTD AND NINGBO YIWEI MUYINYONGPING YOUXIANGONGSI,<br><br>                Plaintiffs,<br><br>    v.<br><br>GOPLUS CORP.,<br><br>                Defendant. | Case No. 5:24-cv-02548-AJR<br><br>**ORDER: (1) GRANTING DEFENDANT'S RULE 12(B) MOTION TO DISMISS (DKT. 39); (2) GRANTING DEFENDANT'S RULE 12(C) MOTION TO DISMISS (DKT. 40); (3) DENYING PLAINTIFFS' RULE 12(B) MOTION TO STRIKE (DKT. 51); AND (4) DENYING PLAINTIFFS' RULE 12(C) MOTION TO STRIKE (DKT. 55)** |

## I.
## INTRODUCTION

This lawsuit is a copyright dispute brought by Plaintiffs Ningbo Yituo Enterprise Management Co., Ltd. and Ningbo Yiwei Muyinyongping Youxiangongsi (collectively, "Plaintiffs") seeking to invalidate U.S. Copyright Registration No. VAu 1-515-727 (the "727 Copyright") held by Defendant GoPlus Corp. ("Defendant"). (Dkt. 1 at 1-4; Dkt. 36 at 1-7.) Plaintiffs initiated this lawsuit on December 2, 2024, when they filed a complaint alleging one count of copyright

invalidity and one count of tortious interference with economic advantage (the "Complaint") against Defendant. (Dkt. 1.) On April 10, 2025, Judge Kewalramani granted Defendant's Anti-SLAPP Motion and struck Plaintiff's tortious interference claim from the Complaint. (Dkt. 28.)

On May 20, 2025, Plaintiffs filed a First Amended Complaint ("FAC") alleging one count of copyright invalidity and one count of damages under 17 U.S.C. § 512(f). (Dkt. 36.) On July 1, 2025, Defendant filed a Motion to Dismiss the First Amended Complaint pursuant to Rule 12(b)(6) (the "Rule 12(b) Motion to Dismiss"). (Dkt. 39.) The Rule 12(b) Motion to Dismiss seeks dismissal of Plaintiffs' claim for damages under 17 U.S.C. § 512(f) of the Digital Millennium Copyright Act ("DMCA") on the grounds that Plaintiffs do not sufficiently plead the elements of 17 U.S.C. § 512(f). (Id.) Also on July 1, 2025, Defendant filed a Motion to Dismiss the First Amended Complaint under Rule 12(c), or in the alternative, under Rule 56 (the "Rule 12(c) Motion to Dismiss"). (Dkt. 40.) The Rule 12(c) Motion to Dismiss seeks dismissal of Plaintiffs' cause of action for Declaratory Judgment on the grounds that Plaintiffs lack standing to challenge the validity of the 727 Copyright. (Id.)

On July 16, 2025, Plaintiffs filed a "Response to Defendant's Special Motion to Strike" which appears to be an opposition to the Rule 12(b) Motion to Dismiss (the "Rule 12(b) Opposition"). (Dkt. 42.) Also on July 16, 2025, Plaintiffs filed another document titled "Response to Defendant's Special Motion to Strike" which appears to be an opposition to the Rule 12(c) Motion to Dismiss (the "Rule 12(c) Opposition"). (Dkt. 43.)

On August 13, 2025, Defendant filed a Reply in Support of the Rule 12(b) Motion to Dismiss (the "Rule 12(b) Reply"). (Dkt. 49.) Also on August 13, 2025, Defendant filed a Reply in Support of the Rule 12(c) Motion to Dismiss (the "Rule 12(c) Reply"). (Dkt. 47.) On August 25, 2025, Plaintiffs filed a Motion to Strike Defendant's Rule 12(b) Reply (the "Rule 12(b) Motion to Strike") seeking to strike

portions of the Rule 12(b) Reply.  (Dkt. 51.)  Also on August 25, 2025, Plaintiffs filed the Declaration of Huicheng Zhou (the "Zhou Declaration") in support of the Rule 12(b) Motion to Strike.  (Dkt. 52.)  On August 26, 2025, Plaintiffs filed a Motion to Strike Defendant's Rule 12(c) Reply (the "Rule 12(c) Motion to Strike") seeking to strike portions of the Rule 12(c) Reply.  (Dkt. 55.)

On September 24, 2025, this Court held a hearing regarding Defendant's motions to dismiss.  (Dkt. 59.)  After considering oral argument from the parties, the Court took the motions under submission.  (Id.)  The Court also granted Plaintiffs seven days to file a proposed sur-reply to Defendant's Rule 12(b) Reply.  (Id.)  The Court directed that the proposed sur-reply be limited to the allegedly new arguments raised in Defendant's Rule 12(b) Reply.  (Id.)  As of today, Plaintiffs have not filed a proposed sur-reply.

The parties consented to have this case proceed for all purposes before a U.S. Magistrate Judge.  (Dkt. 11.)  For the reasons set forth below, the Court GRANTS Defendant's Rule 12(b)(6) Motion to Dismiss WITH LEAVE TO AMEND.  Plaintiffs may file an amended pleading to cure the deficiencies identified below within 21 days.  Additionally, the Court GRANTS Defendant's Rule 12(c) Motion to Dismiss WITHOUT LEAVE TO AMEND.

## II.

## SUMMARY OF ALLEGATIONS IN PLAINTIFFS' FAC

The FAC alleges that both Plaintiffs and Defendant source washing machines from the same manufacturer, Ningbo Baike Electric Appliance Co., Ltd. ("Ningbo Baike"), and sell them in the United States market through Amazon.  (Dkt. 36 at 3.)[1]  On March 21, 2023, Plaintiffs began engaging with Ningbo Baike for the

---

[1] The Court notes that Plaintiffs' FAC does not contain page numbers.  (Dkt. 36.)  Thus, the Court uses the CM/ECF page numbers when referencing specific pages of the FAC.

manufacture of Plaintiffs' washing machines (the "Washing Machines"). (Id.) During communications, Ningbo Baike provided Plaintiffs with a quotation that included models for the Washing Machines sourced by Plaintiffs as well as washing machine models sourced by Defendant. (Id.) Despite sourcing different models, the body patterns of Plaintiffs' and Defendant's washing machines are identical due to the shared use of the same mold by Ningbo Baike. (Id.)

On November 17, 2023, Defendant registered the 727 Copyright for "2-D artworks" of the "Washing Machine Schematic Document." (Dkt. 36-1.) On the Certificate of Registration, the Copyright Office provided a note stating: "Basis for Registration: Registration does not extend to any useful article depicted. Registration extends to deposited artwork only. 17 USC 101, 102(a), and 113." (Id. at 2.) The 727 Copyright does not extend beyond the deposited 2-D artworks submitted to the Copyright Office to any useful article, such as the washing machines themselves, regardless of any similarity in design to the pictures. (Dkt. 36 at 4.) Despite this limitation, Defendant submitted multiple DMCA takedown notices to Amazon from February 2024 through April 2024, requesting Plaintiffs' Washing Machines be delisted for copyright infringement. (Id.) The reports falsely claimed that the 727 Copyright covers and protects Defendant's original design for a washing machine and that "[Plaintiffs'] product itself [was] a copy and/or derivative of the design protected in the Work." (Id.; Dkt. 36-2.)

Defendant has misrepresented that it is the creator of the 2-D artwork in the 727 Copyright and that the 727 Copyright protects the design of the Washing Machines. (Dkt. 36 at 8.) Because Defendant made these misrepresentations in its DMCA takedown notices to Amazon, it is liable to Plaintiffs for damages pursuant to 17 U.S.C. § 512(f). (Id. at 8-9.) Moreover, because Defendant is not the creator of the 2-D artwork in the 727 Copyright, Plaintiffs are entitled to a judgment declaring that the 727 Copyright is invalid. (Id. at 7.)

# III.

# LEGAL STANDARD

To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Mashiri v. Epsten Grinnell & Howell, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).

The Court must accept as true all non-conclusory factual allegations contained in the complaint and must construe the complaint in the light most favorable to the plaintiff. See Steinle v. Cty. & Cnty. of San Francisco, 919 F.3d 1154, 1160 (9th Cir. 2019). "Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion." Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (footnote omitted). The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted); Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1988) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Under Rule 12(c), a party may move for judgment on the pleadings. Rule 12(c) permits a party to seek dismissal of the complaint based on lack of subject

matter jurisdiction and the same standards apply that would apply under Rule 12(b)(1).  See Ryan v. Volpone Stamp Co., 107 F. Supp. 2d 369, 375 n.2 (S.D.N.Y. 2000) ("Following the filing of an answer, a motion to dismiss for lack of subject matter jurisdiction may also be raised pursuant to Rule 12(c).  Although ordinarily such a motion is raised pursuant to Rule 12(b)(1), as with a Rule 12(b)(6) motion, the same standards are applied when the motion is made under Rule 12(c)."). When a defendant brings a motion to dismiss based on lack of subject matter jurisdiction, the plaintiff has the burden to establish jurisdiction.  See Rattlesnake Coal. v. U.S. E.P.A., 509 F.3d 1095, 1102 n.1 (9th Cir. 2007) ("Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.").

A party may challenge jurisdiction "in a factual attack," where "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  Id.  "The court need not presume the truthfulness of the plaintiff's allegations."  Id.  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Id. (internal quotation marks omitted).

The Court may not dismiss a complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  Akhtar, 698 F.3d at 1212 (internal quotation marks omitted); see also Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) ("[A] district court should grant leave to amend even if no request to amend the pleading was made,

unless it determines that the pleading could not possibly be cured by the allegation of other facts." (internal quotations omitted)).

## IV.

## DEFENDANT'S 12(b)(6) MOTION TO DISMISS

Defendant's Rule 12(b) Motion to Dismiss seeks dismissal of Plaintiffs' newly added claim for damages under 17 U.S.C. § 512(f). (Dkt. 39.) Pursuant to "[17 U.S.C.] § 512(f) of the DMCA, a copyright owner may be held liable for damages caused by an erroneous invocation of the notice and takedown provision only if the owner did not possess a subjective good faith belief that its copyright was being infringed." UMG Recordings, Inc. v. Augusto, 558 F. Supp. 2d 1055 (C.D. Cal. 2008), aff'd, 628 F.3d 1175 (9th Cir. 2011). Specifically, section 512(f) states that "[a]ny person who knowingly materially misrepresents . . . that material or activity is infringing . . . shall be liable for any damages . . . incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." 17 U.S.C. 512(f).

The Ninth Circuit has explained that "Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation," and therefore a copyright owner "cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." Rossi v. Motion Picture Ass'n of Am. Inc., 391 F.3d 1000, 1004-05 (9th Cir. 2004). "Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." Id. at 1005. "When enacting the DMCA, Congress could have easily incorporated an objective standard of reasonableness. The fact that it did not do so indicates an intent to adhere to the

subjective standard traditionally associated with a good faith requirement." Id. at 1004.

Accordingly, to state a claim under section 512(f), Plaintiffs "must allege (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith." Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co., 2022 WL 580788 (N.D. Cal. Feb. 25, 2022). For the reasons discussed below, the Court finds that Plaintiffs have failed to sufficiently plead their claims for damages under 17 U.S.C. § 512(f). Thus, Defendant's Rule 12(b)(6) Motion to Dismiss is GRANTED WITH LEAVE TO AMEND.

### A. Plaintiffs Do Not Plausibly Allege A Material Misrepresentation In The DMCA Takedown Notices.

Defendant moves to dismiss Plaintiffs' 17 U.S.C. § 512(f) claim on the grounds that Plaintiffs do not sufficiently plead a material misrepresentation. (Dkt. 39-1 at 9-16.) Plaintiffs' FAC appears to allege that Defendant materially misrepresented: (1) that it is the owner/creator of the 2-D artwork protected by the 727 Copyright; and (2) that the 727 Copyright protections extend beyond the deposited 2-D artwork. (Dkt. 36 at 8.) The Court discusses both alleged misrepresentations below and finds that Plaintiffs have not plausibly alleged a material misrepresentation under 17 U.S.C. § 512(f).

#### 1. Misrepresentations As To Authorship Or Ownership Are Not Cognizable Under 17 U.S.C. § 512(f).

Plaintiffs contend that Defendant knowingly misrepresented authorship and ownership to the Copyright Office when seeking registration of the 727 Copyright and exploited that registration to mislead Amazon. (Dkt. 42 at 9.) However, the plain language of 17 U.S.C. § 512(f) does not cover a misrepresentation as to authorship or ownership. Indeed, Section 512(f) states that "[a]ny **person** who

**knowingly materially misrepresents** . . . that **material or activity** is **infringing** . . . shall be liable for any damages . . . ." 17 U.S.C. § 512(f) (emphasis added). Thus, Section 512(f) simply does not address a misrepresentation as to authorship or ownership of the work, but instead focuses on whether there is a misrepresentation that material or activity is infringing. Therefore, Plaintiff's allegation of misrepresentation to the Copyright Office is more properly raised as a defense to liability for infringement and not as a cognizable claim under the DMCA. See Ningbo Mizhihe I&E Co. v. Does 1-200, 2020 WL 2086216, at *3 (S.D.N.Y. Apr. 30, 2020) ("Defendants will have the chance in due course to raise their argument as to the unenforceability of Plaintiff's copyrights [based on misrepresentations to the Copyright Office], but as a *defense* to liability, not as a counterclaim cognizable under the DMCA." (citation omitted)); see also Arista Records, Inc. v. MP3Board, Inc., 2002 WL 1997918, at *15 (S.D.N.Y. Aug. 29, 2002) ("Section 512 only penalizes copyright holders for knowingly materially misrepresenting 'that material or activity is infringing.' It does not provide a cause of action for knowingly materially misrepresenting that a service provider may be liable for hosting certain material.").

        2.     **<u>Plaintiffs Do Not Plausibly Allege That Defendant Materially Misrepresented The Scope Of The 727 Copyright.</u>**

Plaintiffs further contend that Defendant "falsif[ied] the coverage of the 727 Copyright" when Defendant "knowingly made misrepresentations to Amazon, which make it liable to Plaintiffs[] [for] damages under § 512(f)." (Dkt. 36 at 8.) Specifically, Plaintiffs assert that "Defendant was trying to confuse Amazon between rights of '2-D artwork of an item' and 'design of the item itself'" and that "[t]he 727 Copyright[] protects the 'deposited work only' but cannot 'extend to any useful article.'" (Id.) Plaintiffs argue that "[b]y accusing the physical product – not merely pictorial depictions – of infringement, Defendant deliberately blurred the

line between the registered 2-D artwork and the unprotected elements, including both the design and utilitarian functions." (Dkt. 42 at 10.)

However, the takedown notices simply do not state that the scope of the 727 Copyright extends beyond the deposited work to any utilitarian function. Indeed, the takedown notices state that "Erivess's design copies the Copyright Owner's copyrighted design in: (a) pegboard (vertical striping) design; (b) the top incorporates two separate panels; (c) single horizontal lip design between where the top meets the pegboard; (d) horizontal line near the bottom where the pegboard stops; (e) legs curving around periphery; (f) three centered dials; (g) water inlets on each side of center dials; and (h) a smaller panel top and barrel on the right hand side of machine and a larger panel top and barrel on the left hand side." (Dkt. 36-2 at 3, 6.) This description of infringement clearly focuses on the visual appearance of the Washing Machines, not on any aspect of their utilitarian function.

Moreover, the law is clear that the copyright of a two-dimensional work can extend to a three-dimensional rendering that is derivative. See DC Comics v. Towle, 802 F.3d 1012, 1023 (9th Cir. 2015) ("A derivative work is a work based upon one or more preexisting works that recasts, transforms, or adapts the preexisting work, such as a motion picture that is based on a literary work, a three-dimensional costume based upon two-dimensional cartoon characters, or three-dimensional figurines based on cartoon characters. If an unauthorized third party prepares a derivative work, the copyright owner of the underlying work can sue for infringement." (internal quotation marks and citations omitted)); Sugarfina, Inc. v. Bouquet Bar, Inc., 2018 U.S. Dist. LEXIS 224895, at *13-14 (C.D. Cal. Oct. 9, 2018) ("Accordingly, copyright protection extends to derivative works of those registered copyrights, including three-dimensional renderings of the two-dimensional copyrighted work. An unauthorized three-dimensional rendering of the two-dimensional artwork could still infringe Sugarfina's copyrights." (citation

omitted)).

Therefore, the takedown notices accurately describe the scope of the 727 Copyright where they state, "The infringing material listed by Erivess is a twin-tub washing machine, the product itself being a copy and/or derivative of the design protected in the Work."  (Dkt. 36-2 at 3, 6.)  Indeed, Plaintiffs admit that the design of the Washing Machines is derivative of the design protected by the 727 Copyright.  (Dkt. 36 at 3 ("Despite sourcing different models, the body patterns of the washing machines are identical due to the shared use of the same mold by Ningbo Baike to reduce costs.").)  In light of this admission by Plaintiffs, it is unclear to the Court how Defendant could have misrepresented the scope of the 727 Copyright in the takedown notices.

In sum, the FAC fails to plausibly allege a material misrepresentation in the DMCA takedown notices.  First, Plaintiffs' allegation that Defendant misrepresented authorship and ownership to the Copyright Office when seeking registration of the 727 Copyright is not cognizable under Section 512(f).  Second, Plaintiffs have failed to identify any material misrepresentation regarding the scope of the 727 Copyright in the takedown notices.  Accordingly, Plaintiffs' second cause of action for damages under 17 U.S.C. § 512(f) must be DISMISSED for failure to state a claim.  The Court will grant Plaintiffs 21 days to file an amended pleading that attempts to remedy the defects identified above.

**B.    Plaintiffs Do Not Plausibly Allege That Defendant Acted With Subjective Bad Faith.**

To state a claim for damages under 17 U.S.C. § 512(f), Plaintiffs must also allege that Defendant submitted the takedown notices in subjective bad faith.  See Unicolors, Inc. v. H&M Hennes & Mauritz, L. P., 595 U.S. 178, 185 (2022) ("Other provisions of the Copyright Act confirm that, in this context, the word 'knowledge' means actual, subjective awareness of both the facts and the law.").

This means that "[a] copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake." Rossi, 391 F.3d 1005. "Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." Id.

As an initial matter, Plaintiffs contend that Defendant acted with subjective bad faith by knowingly misrepresenting to the Copyright Office that Defendant was the author and owner of the 2-D work protected by the 727 Copyright. (Dkt. 42 at 13-14.) However, the Court has already concluded that Plaintiffs' allegation of misrepresentation to the Copyright Office is not cognizable under the DMCA. Regardless, the Court would still find that Plaintiffs have not plausibly alleged subjective bad faith in light of Plaintiffs' admission that Defendant has provided a Confirmatory Copyright Assignment Agreement between Defendant and Ningbo Baike which shows that Defendant owns the design of the 2-D work protected by the 727 Copyright. (Dkt. 36 at 5.) Plaintiffs allege that the agreement "is highly suspect" and that Defendant pressured Ningbo Baike to sign the agreement, but even assuming that Defendant applied economic pressure to obtain Ningbo Baike's signature, that would not invalidate the agreement. (Id. at 5-6.) Thus, Plaintiffs have not plausibly alleged that Defendant actually knew that any representation it made to the Copyright Office was false.

Plaintiffs next contend that Defendant acted with subjective bad faith by "only sen[ding] [a] simple notice letter with pictures of the materials include[d] in the 727 Copyright without carefully and extensively laying out the bases for its claims of copyright infringement." (Dkt. 42 at 14 (internal quotation marks omitted).) Specifically, Plaintiffs contend that "Defendant chose to put the efforts in twisting the coverage of 727 Copyright to mislead Amazon, but not providing a more detailed, at least seemingly plausible notice." (Id. at 14-15.) However, the

Court has already concluded that Defendant did not misrepresent the scope of the 727 Copyright in the takedown notices. In the absence of an actual misrepresentation, the Court cannot find a plausible allegation of subjective bad faith.

Finally, Plaintiffs appear to contend that Defendant's use of outside counsel somehow demonstrates actual knowledge of the falsity of the representations in the DMCA takedown notices. (Dkt. 42 at 15.) Once again however, Plaintiffs have failed to identify any actual misrepresentation in the takedown notices. Regardless, the fact that Defendant retained outside counsel experienced in copyright law does not in any way plausibly support subjective bad faith on the part of Defendant.

In sum, the FAC fails to plausibly allege that Defendant acted with subjective bad faith. First, Plaintiffs cannot plausibly allege subjective bad faith by Defendant with regard to its representation of authorship and ownership in light of Plaintiffs' admission that Defendant has provided a Confirmatory Copyright Assignment Agreement between Defendant and Ningbo Baike. Regardless, Plaintiffs' allegation of misrepresentations to the Copyright Office is not actionable under the DMCA. Second, Plaintiffs cannot plausibly allege subjective bad faith by Defendant with regard to its representation about the scope of the 727 Copyright because Plaintiffs have failed to identify any actual misrepresentation in the takedown notices. Accordingly, Plaintiffs' second cause of action for damages under 17 U.S.C. § 512(f) must be DISMISSED for failure to state a claim. The Court will grant Plaintiffs 21 days to file an amended pleading that attempts to remedy the defects identified above.[2]

---

[2] Plaintiffs moved to strike portions of Defendant's Rule 12(b) Reply on the grounds that portions of the Rule 12(b) Reply raised new issues not addressed in the Rule 12(b) Motion to Dismiss. (Dkt. 51-1 at 2-7.) At the hearing on the motions to dismiss, the Court advised Plaintiffs' counsel that it would not strike any portion of the Rule 12(b) Reply, but that Plaintiffs could have seven days to file a proposed sur-reply responding to any allegedly new argument raised in the Rule 12(b) Reply. (Dkt.

# V.

# DEFENDANT'S RULE 12(c) MOTION TO DISMISS

Defendant's Rule 12(c) Motion to Dismiss seeks dismissal of Plaintiffs' first cause of action for declaratory relief based on lack of standing. (Dkt. 40.) Defendant contends that Plaintiffs lack standing to obtain a declaratory judgment because Defendant has provided Plaintiffs with an irrevocable covenant not to sue and therefore Plaintiffs lack any reasonable apprehension of future harm. (Dkt. 40-1 at 11-17.) Defendant further contends that Plaintiffs lack standing to challenge the validity of the 727 Copyright based on the Confirmatory Copyright Assignment Agreement between Defendant and Ningbo Baike. (Id. at 17-23.) For the reasons discussed below, the Court finds that Plaintiffs lack standing to seek a declaratory judgment regarding the validity of the 727 Copyright. Thus, Defendant's Rule 12(c) Motion to Dismiss is GRANTED WITHOUT LEAVE TO AMEND.

## A.   Plaintiffs Lack Standing To Seek Declaratory Relief In Light Of Defendant's Covenant Not To Sue.

Plaintiffs' first cause of action seeks a judgment declaring that the 727 Copyright is invalid. (Dkt. 36 at 7.) "A party seeking a declaration regarding rights under the Copyright Act has standing to sue if he can show that he has a 'real and reasonable apprehension that he will be subject to liability' under the Act." Sakkis v. Artisan Pictures, Inc., 2008 WL 683388, at *4 (C.D. Cal. Mar. 11, 2008) (quoting Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 (9th Cir.1989)). "A case becomes moot – and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." ArcelorMittal v. AK Steel Corp., 856 F.3d 1365, 1370 (Fed. Cir. 2017) (internal quotation marks

---

59.) Plaintiffs never filed a proposed sur-reply. Accordingly, the Court DENIES Plaintiffs' Rule 12(b) Motion to Strike. (Dkt. 51.)

omitted).

Defendant contends that there is no longer any case or controversy between Defendant and Plaintiffs related to the validity of the 727 Copyright because Defendant has provided Plaintiffs with an irrevocable covenant not to sue (the "Covenant Not to Sue"). (Dkt. 40-1 at 14-15; Dkt. 40-4.) The Covenant Not to Sue states in relevant part:

> GoPlus . . . unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against Erivess or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities and all customers of each of the foregoing (whether direct or indirect), on account of any possible cause of action based on or involving Copyright infringement, under state or federal law in the United States arising from U.S. Copyright Registration No. VAu 1-515-727 based on any of Erivess's current and/or previous products or colorable imitations thereof . . . used in commerce before or after the Effective Date of this Covenant.

(Dkt. 40-4 at 3.) The Effective Date of the Covenant Not to Sue is May 27, 2025. (Id. at 2.)

Under the Declaratory Judgment Act, a covenant not to sue may divest a court of jurisdiction over claims for declaratory judgment. See Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1343-48 (Fed. Cir. 2007) (finding no controversy based on covenant not to sue). "Whether a covenant not to sue will in

fact divest [the] Court of jurisdiction depends on what is covered by the covenant." Fulton v. Genea Energy Partners, , 2014 WL 12597588, at *2 (C.D. Cal. Feb. 25, 2014) (internal quotation marks omitted). Here, the Covenant Not to Sue is extremely broad in that it covers not just the filing of a lawsuit, but also making any claim or demand. (Dkt. 40-4 at 3.) Notably, the Covenant Not to Sue is both unconditional and irrevocable. (Id.) The Covenant Not to Sue extends beyond Plaintiffs to their parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities. (Id.) The Covenant Not to Sue also covers not just current and/or previous products, but also any colorable imitation. (Id.)

The Covenant Not to Sue was clearly modeled on the covenant not to sue that the Supreme Court found sufficient "to meet the burden imposed by the voluntary cessation test." Already, LLC v. Nike, Inc., 568 U.S. 85, 93 (2013). In Already, LLC, the Supreme Court analyzed a nearly identical covenant not to sue and concluded as follows:

> The breadth of this covenant suffices to meet the burden imposed by the voluntary cessation test. The covenant is unconditional and irrevocable. Beyond simply prohibiting Nike from filing suit, it prohibits Nike from making any claim or any demand. It reaches beyond Already to protect Already's distributors and customers. And it covers not just current or previous designs, but any colorable imitations.

Id. The Supreme Court ultimately concluded that "given the breadth of the covenant," Already, LLC could not reasonably expect any future injury to occur and therefore, the case was "clearly moot." Id. at 100.

The Court concludes that the Covenant Not to Sue falls clearly under the Supreme Court's holding in Already, LLC and therefore the controversy between Defendant and Plaintiffs as to the validity of the 727 Copyright is clearly moot.

Plaintiffs' counsel expressly conceded this point at the hearing on the motions.[3] Accordingly, the Court DISMISSES Plaintiffs' first cause of action for declaratory relief WITHOUT LEAVE TO AMEND.

## B. Plaintiffs Lack Standing To Challenge Defendant's Ownership Of The 727 Copyright Based On Assignment Because Plaintiffs Do Not Claim Any Interest In The Copyright.

Plaintiffs' first cause of action for declaratory relief is also subject to dismissal because Plaintiffs do not claim any ownership interest in the 727 Copyright. As set forth above, Plaintiffs admit that Defendant has provided a Confirmatory Copyright Assignment Agreement between Defendant and Ningbo Baike which shows that Defendant owns the design of the 2-D work protected by the 727 Copyright. (Dkt. 36 at 5.) Plaintiffs allege that the agreement "is highly suspect" and that Defendant pressured Ningbo Baike to sign the agreement. (Id. at 5-6.) However, Plaintiffs do not allege any interest in the 727 Copyright and instead simply challenge the validity of the assignment from Ningbo Baike to Defendant. (Id.)

Under 17 U.S.C. § 204(a), "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." The Ninth Circuit has explained that "Section 204(a) is designed to resolve disputes between owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." Jules Jordan Video, Inc. v. 144942 Canada Inc., 617 F.3d 1146, 1157 (9th Cir. 2010). However, "[w]hen there is no dispute between the copyright owner and transferee, it would be unusual and unwarranted

---

[3] In light of counsel's concession that Plaintiffs lack standing to seek declaratory relief, Plaintiff's Rule 12(c) Motion to Strike is DENIED as moot. (Dkt. 55.)

to permit a third-party infringer to invoke § 204(a) to avoid suit for copyright infringement." Id. (internal quotation marks omitted); accord Magnuson v. Video Yesteryear, 85 F.3d 1424, 1428-29 (9th Cir. 1996).

Here, Plaintiffs do not allege any interest in the 727 Copyright and there is no dispute between Ningbo Baike and Defendant. (Dkt. 36 at 5-6.) Accordingly, Plaintiffs do not have standing to challenge the Confirmatory Copyright Assignment Agreement that is the basis of Defendant's ownership of the 727 Copyright. See, e.g., Brookwood Homebuilding & Remodeling, LLC v. Landis Reed Homes, LLC, 267 F. Supp. 3d 685, 691 (W.D.N.C. 2017) ("The Court does find as a matter of law that the Defendant lacks standing to challenge the transfer of the copyright assignment because there is no dispute about the identity of the true owner of the copyright between the owner and the transferee."); see also Sierra Club v. Morton, 405 U.S. 727, 731 (1972) (explaining that a litigant must possess "a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy"). Thus, the Court concludes that Plaintiffs' first cause of action for declaratory relief is also subject to dismissal because Plaintiffs lack standing to challenge the assignment from Ningbo Baike to Defendant.

\\

\\

\\

\\

\\

# VI.

# ORDER

Based on the foregoing, the Court ORDERS as follows:  (1) Defendant's Rule 12(b) Motion to Dismiss is GRANTED WITH LEAVE TO AMEND (Dkt. 39); (2) Defendant's Rule 12(c) Motion to Dismiss is GRANTED WITHOUT LEAVE TO AMEND (Dkt. 40); (3) Plaintiffs' Rule 12(b) Motion to Strike is DENIED (Dkt. 51); and (4) Plaintiffs' Rule 12(c) Motion to Strike is DENIED.  On or before **October 30, 2025**, Plaintiffs shall file a Second Amended Complaint ("SAC") that attempts to remedy the identified defects.

DATED:  October 9, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE